IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **DAVID ALFONSO LOSADA,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-26-CV-01009-DB** |
| | § | |
| **MICHAEL WATKINS,** *Warden of Camp* | § | |
| *East Montana, et al.,* | § | |
| **Respondents.** | § | |

**ORDER OF IMMEDIATE RELEASE**

On this day, the Court considered the above captioned case. On April 9, 2026, Petitioner David Alfonso Losada[1] filed *pro se* a "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241," ECF No. 3. In their Petition, Petitioner asks this Court to "1) Assume jurisdiction over this matter, 2) Grant Petitioner a writ of habeas corpus directing Respondents to immediately release Petitioner from custody under reasonable conditions of supervision." *Id.* at 7. Petitioner is a Cuban national with a final order of removal to Cuba from 2018 who is currently in immigration detention. *Id.* at 1; ECF No. 7 at 2. Among other things, Petitioner contends his detention is unlawful because there is no significant likelihood of removal in the reasonably foreseeable future as required by the Fifth Amendment's Due Process Clause. ECF No. 3 at 7. Petitioner avers removal to Cuba is not likely because there is "no immigration agreement" between Cuba and the United States and asserts the same as to his removal to Mexico. *Id.*

Petitioner has a final order of removal to Cuba since January 24, 2018. ECF No. 7 at 2. On April 24, 2018, after 90 days in custody, Petitioner was released on an Order of Supervision, "due

---

[1] This is Petitioner's true name. *See* ECF No. 10 at 2.

to Cuba denying repatriation," and Respondents "determining there was no significant likelihood he would be removed in the reasonably foreseeable future." *Id.* Petitioner was re-detained on January 27, 2026, after an arrest on state charges in Florida, to pursue removal to a third country under the Cuba Venezuela Nicaragua Haiti ("CVNH") repatriation agreement. *Id.* Petitioner was served with a revocation of release. *Id.* On Feburary 10, 2026, Petitioner declined to be removed to Mexico and was identified as a failure to comply. *Id.* As of February 19, 2026, the Mexican government advised that they are no longer accepting "failure to comply" cases for removal. *Id.* Respondents once again attempted to remove Petitioner to Mexico on April 3, 2026, and Petitioner refused to consent. ECF No. 7-1 at 3. Between January 28, 2026, and April 3, 2026, the Petitioner has repeatedly failed to comply with efforts to remove him to Mexico. *Id.*

In lieu of an evidentiary hearing, the Court ordered Respondents to file a supplemental advisory about their efforts to remove Petitioner from the United States. ECF No. 8. In response, Respondents provided the following:

> Can Respondents legally move Petitioner to Mexico without his consent? Respondents may remove Petitioner to Mexico without his consent. [] 2. If so, why is Petitioner's refusal to go to Mexico preventing Respondents from removing him? Petitioner's refusal to go to Mexico willingly is preventing Respondents from removing him. Further, as of February 19, 2026, the Government of Mexico is no longer accepting failure to comply cases for removal. [] 3. Have Respondents designated a different third country for removal other than Mexico? No other third country other than Mexico has been designated. [] 4. If so, what steps have Respondents taken to effectuate Petitioner's removal to a third country other than Mexico? Headquarters (HQ) Removal International Operations (RIO) continues to actively seek alternative countries willing to accept the Petitioner for removal to another safe third country. [] 5. What is Petitioner's true name? Petitioner's name has been verified as First: David, Middle: Alfonso, Last: Losada, be reviewing a formal immigration document I-589, Application for Asylum and for Withholding of Removal, in his electronic file. The I-589, was

2

> submitted by the Petitioner and was signed by him, attesting to his
> true and correct full name of record. []

ECF No. 10 at 1–2.

## **LEGAL STANDARD**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate they are in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

The statutory provision that governs the Court's review in this case is 8 U.S.C. § 1231. Under § 1231(a)(1)(A), when a noncitizen is ordered removed, the Attorney General has 90 days to remove them from the United States. During this 90-day removal period, DHS and ICE are required to detain the noncitizen. Upon the conclusion of the 90-day removal period the statute allows for either continued detention or release under supervision. 8 U.S.C. § 1231(a). Although the statute gives the Attorney General the discretion to continue detaining a noncitizen in this situation, this detention is subject to the limits of the Fifth Amendment's Due Process clause. *See Zadvydas*, 533 U.S. at 690-692.

In *Zadvydas v. Davis* the Supreme Court interpreted Section 1231(a)(6), the provision that allows for detention beyond the 90-day removal period, to limit post-removal-period detention to a period "reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. The Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701.  Beyond six months, if removal is no longer reasonably foreseeable, continued detention is

3

not authorized by the statute. *Id.* at 699. Under *Zadvydas,* if a noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future in a habeas corpus petition, the Government must respond with evidence sufficient to rebut that showing. *Id.* at 701.

## **DISCUSSION**

The Court finds Petitioner's removal from the United States is not significantly likely to occur in the reasonably foreseeable future. Generally, when a noncitizen is ordered removed from the United States, removal should occur within ninety days. 8 U.S.C. § 1231(a)(1)(A). Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into 8 U.S.C. § 1231 and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 689–90. This period is presumptively six months. *Id.* at 701. After the presumptively reasonable period[2] and once the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must rebut this showing or release the noncitizen. *Id.*

---

[2] Petitioner was detained for 90 days after his final order of removal in 2018 and has spent 90 days in custody during his current re-detention. This Court has not decided the question of whether detention for *Zadvydas* purposes is cumulative or the clock restarts with each re-detention. *See generally Abuelhawa v. Noem,* 811 F.Supp.3d 847, 855–56 (S.D. Tex. 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated by a concern that the federal government could otherwise detain aliens indefinitely by continuously releasing and re-detaining them."); *Villanueva v. Tate*, 801 F.Supp.3d 689, 703 (S.D. Tex. 2025) (acknowledging some split in authority but concluding that *Zadvydas* does not "permit the government to indefinitely detain a noncitizen by the simple expedient of releasing and then re-detaining him in a series of 'presumptively constitutional' six-month increments"). Here, because Respondents do not dispute the timeliness of Petitioner's *Zadvydas* claim, the Court will address the merits of Petitioner's claims.

As a threshold matter, the Court finds Petitioner meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (citing *Zadvydas*, 533 U.S. at 699). Petitioner has a final order of removal to Cuba since January 24, 2018, and was released on an order of supervision on April 24, 2018. ECF No. 7 at 2. In his Petition, Petitioner asserts his removal to Cuba is not likely because there is no immigration agreement with Cuba. ECF No. 3 at 7. Petitioner has in fact already been denied repatriation to Cuba. ECF No. 7 at 2. Accordingly, Respondents' only option is to remove Petitioner to a third country.

Petitioner was re-detained on January 27, 2026, and served with a revocation of release. ECF No. 7 at 2. Respondents contend they re-detained Petitioner because they now believe Petitioner's removal is significantly likely to occur in the foreseeable future under the CVNH agreement. ECF No. 7 at 2. Petitioner asserts his removal to Mexico is not likely because there is no agreement with Mexico for third country removals. ECF No. 3 at 6. This is incorrect given Mexico does in fact does accept third country removals under the CVNH agreement. Yet, applying CVNH's terms to the facts of this case, the Court finds removal to Mexico is not significantly likely in the reasonably foreseeable future.

On Feburary 10, 2026, Respondents attempted to remove Petitioner to Mexico but he declined. ECF No. 7-1 at 3. At that point, Petitioner was identified as a failure to comply. *Id.* As of February 19, 2026, the Mexican government advised that they are no longer accepting "failure to comply" cases for removal. *Id.* Respondents once again attempted to remove Petitioner to Mexico on April 3, 2026, but Petitioner again refused to consent. ECF No. 7-1 at 3. Since his re-detention on January 78, 2026, Petitioner has repeatedly failed to comply with efforts to remove him to

Mexico. *Id.* Respondents now make clear "Petitioner's refusal to go to Mexico willingly is preventing Respondents from removing him." ECF No. 10 at 1. Without any indication Petitioner will consent or that the Mexican government will accept Petitioner without it, there is no significant likelihood of removal in the reasonably foreseeable future.

Respondents also advise they have not yet designated any third country other than Mexico for removal but continue to actively seek alternative countries willing to accept the Petitioner. *Id.* Yet, this Court cannot deem removal reasonably foreseeable so long as good faith efforts continue. Such a standard "would seem to require an alien seeking release to show the absence of any prospect of removal— no matter how unlikely or unforeseeable—which demands more than our reading of the statute can bear." *Zadvydas*, 533 U.S. at 701. Accordingly, the Court finds Respondents failed to rebut Petitioner's assertion that there is no *significant* likelihood of his removal in the reasonably foreseeable future, making any continued detention unlawful.

### CONCLUSION

For the reasons stated above, Petitioner has established he is entitled to habeas relief based on *Zadvydas v. Davis* and the Fifth Amendment's Due Process Clause. Accordingly, the Court issues the following orders:

**IT IS HEREBY ORDERED** David Alfonso Losada's "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241," ECF No. 3, is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** Respondents **SHALL IMMEDIATELY RELEASE** Petitioner from custody **by no later than April 28, 2026,** subject to the same conditions of supervision imposed prior to his re-detention on December 2, 2025.

**IT IS FURTHER ORDERED** Respondents **SHALL FILE** an advisory informing the Court of Petitioner's release **no later than April 30, 2026.**

**IT IS FURTHER ORDERED** that when Petitioner is released from custody, Respondents **SHALL RETURN** all personal property in their custody to Petitioner upon release. Such property includes, but is not limited to, identification documents.

**IT IS FURTHER ORDERED** that, following Petitioner's release, the parties **SHALL CONFER** and **FILE** a notice informing the Court whether any matters remain to be resolved in this case **no later than May 4, 2026.**

**IT IS FURTHER ORDERED** the District Clerk's Office **SHALL CORRECT** the docket in this case to reflect Petitioner's true name "David Alfonso Losada," as provided by Respondents**.[3]**

**IT IS FINALLY ORDERED** the District Clerk's Office **SHALL OVERNIGHT MAIL** a copy of this order to Petitioner David Alfonso Losada.

**SIGNED** this **27th** day of **April 2026**.

_____

**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[3] *See* ECF No. 10 at 2 ("Petitioner's name has been verified as First: David, Middle: Alfonso, Last: Losada").